UNITED STATES OF AMERICA,

 Plaintiff,

*vs.*   **CRIMINAL ACTION NO. 2:06CR12**

RICHARD WEAVER,

 Defendant.

### REPORT AND RECOMMENDATION/OPINION

On the 13th day of June 2006, came the defendant, Richard Weaver, through counsel, Scott Curnutte, and also came the United States by its Assistant United States Attorney, Stephen Warner, for a hearing on Defendant's Motion to Suppress [Docket Entry 16], which was filed on May 26, 2006. The Government's Response was due June 5, 2006; however, no response was filed.

The undersigned received the testimony of Upshur County Sheriff's Department Sgt. Marshall Powers and Upshur County Deputy Sheriff Charles Day; received exhibits in evidence; and heard arguments of counsel.

### Procedural History

Defendant was indicted by a grand jury attending the United States District Court for the Northern District of West Virginia on April 18, 2006. The indictment charges Defendant with Conspiracy to Manufacture, Distribute, and Possess with Intent to Distribute Methamphetamine, and Maintaining Drug Involved Premises (Docket Entry 6). A summons was issued on April 19, 2006, and Defendant appeared before United States Magistrate Judge John S. Kaull for Arraignment on May 9, 2006.

## Facts

The undersigned finds the following testimony and evidence credible, and therefore recommends these findings of fact. On May 31, 2005, at about 10:00 p.m., Upshur County Deputy Sheriff Brady received a tip from an unknown source, stating that Defendant was "cooking" methamphetamine at his residence. Deputy Brady informed Deputy Charles Day of the tip, but did not identify the source of the information, stating only that he had received it from an unknown source. He asked Deputy Day to "look into it," and Deputy Day in turn informed Sgt. Powers. Sgt. Powers and Deputy Day drove to the defendant's residence on County Rt. 30/1. Defendant's residence, an older single-wide trailer, was on the right side of the road. The officers were traveling 15-20 miles per hour in front of Defendant's house. The mobile home sits down below the road, with the home's roof line about equal to the surface of the road. Prior to reaching the house there are trees on either side of the road and another residence a very short distance away.

Along with the mobile home, the officers saw a Winnebago motor home, a 55 gallon drum "for burning things," with a fire in it, and a Dodge Ram Charger. The lights were on inside the mobile home, but the officers could not recall whether the lights were on in the Winnebago.

Both officers had been involved in a prior methamphetamine investigation, and Sgt. Powers testified he had attended training in investigation of meth labs. While driving on the road near the mobile home the officers smelled a chemical odor they associated with methamphetamine because the smell was like that in the prior methamphetamine investigation. The odor was coming from the direction of Defendant's property.

The officers then continued on the same road to Deputy Sheriff Kelly Coffman's residence to call a magistrate and call out other officers. The officers met at the Sheriff's Department.

2

Deputy Day filled out the application for a search warrant. He is the affiant for the search warrant. Upshur County Magistrate Juanita Adams issued a search warrant at some time past midnight.

Officers Coffman, Brady, Day, Powers, and a City Police Officer arrived at Defendant's residence about 1- 1:30 a.m. Defendant was present and awake when they arrived. There were six people in the residence. The officers had them all come into the living room.

Defendant was transported to the Sheriff's Office and was questioned by Deputies Brady and Powers. Sgt. Powers first talked with Defendant at about 5:47 a.m. The officers aso talked to other people who had been at the residence. One, Veronica Tenny gave a statement but subsequently changed it. Lori Long also gave two statements, the second of which begins: "I wish to change some of my answers."

Defendant gave two statements, one at 6:15 a.m. and one shortly before 11:00 a.m. He had previously executed a written waiver of his <u>Miranda</u> rights. During the time he waited at the Sheriff's Office, he was handcuffed to a bench when not being interviewed, but was allowed to use the rest room, get drinks of water, and go outside to smoke, and was able to talk to the other people detained with him.

The Court admitted Exhibit 1, the Search Warrant; Exhibit 2, a property list consisting of two pages listing 39 items seized from Defendant's residence and signed by Defendant; and Exhibit 3, a listing of items (mostly samples) seized by the State Police Bureau of Criminal Investigation.

### Contentions of the Parties

Defendant contends:

1. The affidavit in support of the Search Warrant is "utterly insufficient to support a finding of

3

probable cause;"

2. Certain items seized are not listed on the Search Warrant;

3. The items seized by the State Police BCI unit are not listed on the receipt/return;

4. Neither Defendant nor a witness signed the State Police Evidence form (Exhibit Three).

5. Defendant's statements to police must be excluded as "fruit of the poisonous tree;" and

6. Defendant's statements to police also must be excluded because they were not voluntary under the totality of the circumstances;

## 1. Probable Cause in Support of Search Warrant.

Defendant first argues the affidavit in support of the search warrant was "utterly insufficient to support a finding of probable cause." The grounds for probable cause for the issuance of the warrant were stated as follows:

> .... this officer received information from Deputy Brady, who advised he received an anonymous tip stating that Richard Weaver is manufacturing methamphetamines at his residence located on secondary route 30/1 in Upshur County. Deputy Powers and I went to the location and observed a chemical odor that appeared to be the same odor in prior clandestine labs.

(Defense Exhibit 1).

In a review of an issued search warrant, "great deference" is given to the issuing judicial officer's probable cause determination. United States v. Blackwood, 913 F.2d139, 142 (4th Cir. 1990). The test on review is whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. Massachusetts v. Upton, 466 U.S. 727, 728 (1984). To that end, the reviewing court does not conduct a *de novo* review but instead limits itself to the information presented to the magistrate who issued the warrant. Id. See also United States v. Wilhelm, 80 F. 3d. 116, 118 (4th Cir. 1996).

The determination of whether the State Magistrate had probable cause to issue the warrant to search Defendant's property is made by answering the question: From a totality of the circumstances presented to the issuing judge, was there "a fair probability that contraband or evidence of a crime" would be found at the property? Illinois v. Gates, 462 U.S. 213, 238 (1983). The undersigned answers the question in the affirmative.

While true that warrants based on uncorroborated tips from "unknown, unavailable" informants may not be sufficient for probable cause, U.S. v. Wilhelm, 80 F.3d 116 (4th Cir. 1996), here that "tip" was corroborated by the officers' own investigation and detection of the odor they associated with prior methamphetamine labs. As the United States Supreme Court stated in Johnson v. U.S., 333 U.S. 10, 68 S. Ct. 367 (1948):

> If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character.

Recently, the Fourth Circuit, in U.S. v. Cisneros-Mayoral, 129 Fed. Appx. 37, 2005 WL 705406 (4th Cir. 2005)(unpublished), found:

> [The detective's] detection of the odor of marijuana . . . corroborated the informant's allegation that appellant was using his residence to traffic in narcotics. And the detectives' provision of this information to the magistrate elevated the warrant application beyond the "bare bones" status that we have previously condemned, . . ., and supplied the issuing magistrate with adequate information to make a probable cause determination. Indeed other courts have deemed drug odor sufficiently indicative of criminal activity to support probable cause. See, e.g., United States v. Sweeney, 688 F.2d 1131, 1137-38 (7th Cir. 1982).[1]

---

[1]A copy of Cisneros-Mayoral is attached to this Opinion pursuant to CTA Rule 36(c).

(Emphasis added).  The Tenth Circuit has similarly concluded:

> An officer's detection of the smell of drugs, such as methamphetamine . . . can be an independently sufficient basis for probable cause." *United States v. West,* 219 F.3d 1171, 1178 (10th Cir.2000) (collecting cases). We see no reason to limit these cases to vehicle searches: the scent of methamphetamine, wherever detected, gives qualified officers probable cause to search for methamphetamine and evidence of methamphetamine manufacturing.

U.S. v. Windrix, 405 F.3d 1146 (10th Cir. 2005)(emphasis added).

The undersigned therefore finds that probable cause supported the issuance of the search warrant by the State Magistrate.

## 2.  The **Leon** Good Faith Exception to the Exclusionary Rule

Even if the Court were to find that the search warrant was not supported by probable cause, the search would still be upheld under the "good faith" exception to the exclusionary rule announced by the United States Supreme Court in United States v. Leon, 468 U.S. 897, 926, 104 S. Ct. 3405, 3422, 82 L.Ed 2d 677 (1984).

The exclusionary rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Calandra, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974).  In Leon, the Supreme Court explained the reason for rule:

> First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.  Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion.  Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate.

468 U.S. 897, 915, 104 S. Ct. 3405, 3417.

"If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Id. at 918, 104 S. Ct. 3405, 3419. The Supreme Court concluded that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922, 104 S. Ct. 3405, 3420. Therefore, the question of whether the good faith exception to the exclusionary rule should be applied to suppress evidence, depends on whether suppression of the evidence would have the desired effect of deterring police misconduct. In most cases, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope . . . . there is no police illegality and thus nothing to deter." Id. at 920-21, 104 S. Ct. 3405, 3419.

The Fourth Circuit followed the Supreme Court's line of reasoning in United States v. Lalor:

Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

996 F.2d 1578 (4th Cir. 1993). Accord United States v. Bynum, 293 F.3d 192, 197-199 (4th Cir. 2002) (applying good faith exception where "affidavit contained sufficient indicia of probable cause so as not to render reliance on it totally unreasonable," reversing district court's suppression of evidence); and United States v. Cluchette, 24 F.3d 577 (4th Cir. 1994) (applying good faith exception to search warrant issued by state judge over telephone, declining to determine whether warrant was valid under state law.) In other words, the good faith exception applies unless "a reasonably well-

trained officer . . . [should] have known that the search was illegal despite the magistrate's

authorization." Leon, 468 U.S. at 922 n.23.

The Fourth Circuit has noted "four situations in which an officer's reliance on a search

warrant would not be reasonable," and the good faith exception would therefore not apply:

> (1) the magistrate was misled by information in an affidavit that the officer knew was
> false or would have known was false except for the officer's reckless disregard of the
> truth;
> (2) the magistrate wholly abandoned his detached and neutral judicial role;
> (3) the warrant was based on an affidavit that was so lacking in indicia of probable
> cause as to render official belief in it existence entirely unreasonable; and
> (4) the warrant was so facially deficient, by failing to particularize the place to be
> searched or the things to be seized, that the executing officers cannot reasonably
> presume it to be valid.

United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995), quoting Leon, 468 U.S. at 923.

The undersigned does not find any of the four situations which would make the good

faith exception inapplicable exist in this case. There is no evidence that anything Deputy Day said

in his affidavit was false or misleading. There is also no evidence that Magistrate Adams "wholly

abandoned h[er] detached and neutral judicial role." Further, as already found, a review of the

affidavit does not indicate it "was so lacking in indicia of probable cause as to render official belief

in it existence entirely unreasonable." This is not a case of a "bare bones" affidavit, relying on

anonymous informants.

> A "bare bones" affidavit is one in which an affiant merely recites the conclusions of
> others - - usually a confidential informant - - without corroboration or independent
> investigation of the facts alleged . . . . However, a 'bare bones' affidavit is not one
> with weak inferences, but rather one without facts from which a judge can determine
> probable cause.

United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). As the Fourth Circuit recently found in

Cisneros-Mayoral:

8

> Indeed other courts have deemed drug odor sufficiently indicative of criminal activity to support probable cause. See, e.g. United States v. Sweeney, 688 F.2d 1131, 1137-38 (7th Cir. 1982). Mindful of this precedent, we can hardly conclude that the warrant application was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Leon, 468 U.S. at 923, 104 S.Ct. 3405 (citation omitted).

129 Fed. Appx. 37 at *40.

Finally, the warrant was not "so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid."

For all the above reasons, the undersigned finds the officers' reliance on the search warrant issued by the State magistrate was objectively reasonable. The good faith exception therefore renders the evidence seized in the search admissible, even if the search warrant lacked probable cause.

### 3. Items seized but not listed on the Search Warrant.

Defendant next argues that certain items seized were not included in the Search Warrant as evidence to be seized. These items include evidence such as air line tubing and lithium batteries. A review of the warrant does not show these particular items listed. The Government argues these items fall under either Item G: "Paraphernalia for packaging, cutting, weighing, using, or distributing controlled substances, including but not limited to scales, plastic baggies, and pipes;" or Item I: "Any and all other material evidence violating West Virginia State Code including but not limited to, violations of Chapter 60A of the West Virginia State Code, the Uniform Controlled Substances Act."

In Harris v. United States, 331 U.S. 145, 67 S. Ct. 1098, 91 L.Ed. 1399 (1947), the United States Supreme Court upheld the seizure of items not listed in a search warrant where the search was

directed in good faith toward the objects specified in the warrant or for other "means and instrumentalities" by which the crime charged had been committed. This reasoning, while specifically directed at searches incident to arrest, applies equally to a search made pursuant to a valid search warrant. See also Johnson v. U.S. 293 F.2d 539 (C.A.D.C.1961), which provides:

> An officer engaged in a lawful search is not confined to seizing only those items described in the warrant, especially where unlisted items seized are instrumentalities of a crime, and although the Fourth Amendment provides that the warrant must particularly describe the things to be seized, given a lawful search, some things may be seized in connection therewith that are not described in the warrant.

Similarly, the Fifth Circuit in Barnes v. U.S. 374 F.2d 126, found:

> [A] postal money order stub, sledge hammer and ball peen hammer seized by authorities engaged in searching defendant's residence pursuant to search warrant which did not specifically list the items were admissible in evidence in prosecution for breaking and entering post office with intent to commit larceny, in view of fact that stub and hammers were within category of property which had been used in commission of criminal offense

In the case at bar, the search warrant alleged that Defendant violated the statute making it illegal for any person to "manufacture, deliver or posses with the intent to manufacture or deliver a controlled substance or any other controlled substance classified in Schedule I, II, III, IV, in violation of Chapter 60A, Article 4, Section 40 of the Code of West Virginia." According to the testimony of Sgt. Powers, the items seized but not listed on the search warrant "could all or in some part be used in the manufacture of methamphetamine . . ."

The search warrant does list "paraphernalia for packaging, cutting, weighing, using, or distributing controlled substances, including but not limited to scales, plastic baggies, and pipes;" as well as "Any and all other material evidence violating West Virginia State Code including but not limited to, violations of Chapter 60A of the West Virginia State Code, the Uniform Controlled

10

Substance Act."

The undersigned finds the search was lawful and was directed in good faith toward the objects specified in the warrant or for other "means and instrumentalities" by which the crime charged had been committed. The undersigned further finds the items seized but not listed on the warrant were reasonably believed by the officers to be "means and instrumentalities" for manufacturing methamphetamine, which was the crime charged.

### 4. Exhibit Three Items

Defendant next argues that Exhibit Three was not prepared and verified in his presence. He further argues the items listed on Exhibit Three were not listed in the property receipt and therefore must be excluded. Exhibit Three is a form filled out by a State Police BCI officer after the unit took samples and photographs of evidence. There are 18 items on the list. These items were not listed on the receipt, and Defendant was not present when these items were seized, having previously been transported to the Sheriff's Office. Exhibit Three is further not signed by Defendant or another witness.

Rule 41(f)(2) requires:

An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. The officer must do so in the presence of another officer and the person from whom, or from whose premises, the property was taken. <u>If either one is not present, the officer must prepare and verify the inventory in the presence of at least one other credible person.</u>

(Emphasis added). Rule 41(f)(3) requires:

The officer executing the warrant must:
(A) give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken; or

11

(B) leave a copy of the warrant and receipt at the place where the officer took the property.

It is undisputed that Defendant was not present when the evidence on Exhibit Three was seized. However, the credible testimony was that the officer preparing the form did so in the presence of another credible person. The undersigned therefore finds no violation in this regard.

It is also undisputed that the items listed on Exhibit Three were not included in the receipt given to Defendant. The undersigned finds this omission of the Exhibit Three items from a receipt does violate Rule 41. In U.S. v. Wyder, 674 F.2d 224 (4th Cir. 1982), the Fourth Circuit stated:

> Evidence must be suppressed if obtained in a search rendered invalid by a failure to conform with Rule 41. See, e.g., United States v. Haywood, 464 F.2d 756, 760 (D.C.Cir.1972) (dictum); Navarro v. United States, 400 F.2d 315, 319 (5 Cir. 1968). Courts have frequently held, however, that not all violations of Rule 41(d) render a search invalid. "Ministerial" violations of Rule 41(d), it has been held, require suppression of evidence only if the defendant can demonstrate that he was prejudiced by the violation. See, e.g., United States v. Dudek, 530 F.2d 684, 688 (6 Cir. 1976) (defective return; unverified inventory); United States v. Hall, 505 F.2d 961, 964 (3 Cir. 1974) (defective return); United States v. Harrington, 504 F.2d 130, 134 (7 Cir. 1974) (failure to give defendant a copy of the warrant and a receipt); United States v. Kennedy, 457 F.2d 63, 67 (10 Cir.) (defective return), cert. denied, 409 U.S. 864, 93 S.Ct. 157, 34 L.Ed.2d 112 (1972); United States v. Moore, 452 F.2d 569, 572-73 (6 Cir. 1971) (defective inventory), cert. denied, 407 U.S. 910, 92 S.Ct. 2435, 32 L.Ed.2d 684 (1972); United States v. Wilson, 451 F.2d 209, 214 (5 Cir. 1971) (no return), cert. denied sub nom. Fairman v. United States, 405 U.S. 1032, 92 S.Ct. 1298, 31 L.Ed.2d 490 (1972); United States v. McKenzie, 446 F.2d 949, 954 (6 Cir. 1971) (copy of warrant given a day late); United States v. Haskins, 345 F.2d 111, 117 (6 Cir. 1965) (defective return); Evans v. United States, 242 F.2d 534, 536 (6 Cir.) (per curiam) (defective return), cert. denied, 353 U.S. 976, 77 S.Ct. 1059, 1 L.Ed.2d 1137 (1957). At least two circuits have indicated that all violations of Rule 41(d) are ministerial. See United States v. Hall, supra (Third Circuit); United States v. McKenzie, supra (Sixth Circuit). And the Second Circuit has stated that a violation of any provision of Rule 41 will lead to suppression of evidence only upon a showing of prejudice to the defendant or of intentional and deliberate disregard of the rule by the government. See United States v. Burke, 517 F.2d 377, 386-87 (2 Cir. 1975).

We endorse the doctrine that ministerial violations of Rule 41(d) require suppression

only if the defendant can demonstrate that he was prejudiced by the violation. We express no view on the more sweeping rules announced in Hall, McKenzie, and Burke, however, because we think that in any event, the violation in the present case was ministerial. Since Wyder did not, and could not, demonstrate that he was prejudiced thereby, we conclude that the district court was correct in overruling Wyder's motion to suppress.

In U.S. v. Simons, 206 F.3d 392 (4th Cir. 2000), the Fourth Circuit stated:

> There are two categories of Rule 41 violations: those involving constitutional violations, and all others. See United States v. Chaar, 137 F.3d 359, 362 (6th Cir. 1998); United States v. Gerber, 994 F.2d 1556, 1560 (11th Cir. 1993); United States v. Negrete-Gonzales, 966 F.2d 1277, 1283 (9th Cir. 1992); United States v. Burke, 517 F.2d 377, 386-87 (2d Cir. 1975). The violations termed "ministerial" in our prior cases obviously fall into the latter category. See United States v. Smith, 914 F.2d 565, 568 (4th Cir. 1990)(labeling as "ministerial" claimed error that government had not returned warrant to magistrate judge within prescribed period); United States v. Wyder, 674 F.2d 224, 225-26 (4th Cir. 1982)(labeling as "ministerial" scrivener's error contained in copy of the warrant given to the defendant). Non-constitutional violations of Rule 41 warrant suppression only when the defendant is prejudiced by the violation, See Smith, 914 F.2d at 568; Wyder, 674 F.2d at 226, or when "there is evidence of intentional and deliberate disregard of a provision in the rule," Burke, 517 F.2d at 387. See Chaar, 137 F.3d at 362; Gerber, 994 F.2d at 1560; Negrete-Gonzales, 966 F.2d at 1283.

In Simons, the Fourth Circuit found the officers' failure to leave either a copy of the warrant or a receipt for the items taken did not render the search unreasonable under the Fourth Amendment. The undersigned therefore finds the omission from the receipt of the items sampled/seized/photographed by the State Police BCI unit likewise did not infringe on Defendant's constitutional rights.

Having concluded that the Rule 41 violation did not infringe on Defendant's constitutional rights, the undersigned must evaluate whether Defendant was prejudiced by the violation or whether there is "evidence of intentional and deliberate disregard" of the Rule. The undersigned finds

13

Defendant has demonstrated no prejudice from the omission of the items from the receipt, and further finds there is no evidence of intentional and deliberate disregard of the rule. Instead the testimony was that the County officers had completed their search and properly verified and signed their receipt, and the State Police BCI unit arrived afterward, did its sampling/photographing before the hazardous materials were destroyed, and completed its own form, but then simply failed to give a copy to Defendant or have him sign it.

For all the above reasons, the undersigned therefore finds the items on Exhibit Three need not be excluded.

## 5. Defendant's Statements to Police

Defendant also argues his statements to police must be excluded for two reasons: 1) as fruits of the poisonous tree, and 2) because they were not voluntary under the totality of the circumstances. Because the undersigned has already found the search was supported by probable cause, Defendant's first argument in this regard is without merit.

Defendant argues his statements were not voluntary "under the totality of the circumstances" because they were "extracted from him nearly three hours following his arrest, and apparently nearly five hours after the initial search." He further argues this position is supported by the fact that two other people seized at the same time as Defendant changed their statements while in custody.

The testimony was that the officers arrived at Defendant's residence to execute the search warrant between 1:00 and 1:30 a.m., and the officers first talked to Defendant at approximately 5:47 a.m., 4 ½ to 5 hours later. The officers further testified that Defendant was handcuffed to a bench when he was not being interviewed at the Sheriff's Department, but also testified Defendant was

14

permitted to use the rest room, go outside and smoke, and have a drink of water. They testified he had not been fed, but had not requested any food. The Defendant and the others arrested with him were able to talk to each other.

The officer also testified that Defendant was <u>Mirandized</u> before he made the statements and never requested the opportunity to speak with counsel.

In <u>U.S. v. Wertz</u>, 625 F.2d 1128 (4th Cir. 1980), the Fourth Circuit stated:

A confession is involuntary and subject to suppression when induced by such duress or coercion, express or implied, that the accused's "will has been overborne and his capacity for self-determination critically impaired," <u>Schneckloth v. Bustamonte</u>, (1973) 412 U.S. 218, 225, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, and his statement was not " 'the product of a rational intellect and a free will,' " <u>Mincey v. Arizona</u>, (1978) 437 U.S. 385, 398, 98 S.Ct. 2408, 2417, 57 L.Ed.2d 290.

Importantly, the circumstances surrounding the interrogation or interview need not be entirely free from intimidation. <u>U.S. v. Braxton</u>, 112 F.3d 777 (4th Cir. 1997). Nor does the fact that defendant was in handcuffs render his statements involuntary. <u>See, e.g.</u>, <u>U.S. v. Elie</u>, 111 F.3d 1135 (4th Cir. 1997)(abrogated on other grounds)("coercive police activity is a necessary predicate to a finding that a statement is not voluntary"). Finally, the amount of time that lapses before the subject is interviewed, while one factor to consider, is also not dispositive. <u>See, e.g.</u>, <u>U.S. v. Van Metre</u>, 150 F.3d 339 (4th Cir. 1998) (55-hour delay between arrest and initial court appearance did not render confessions involuntary in light of "totality of circumstances," noting absence of "coercive police conduct"). Here only about five hours passed between the time of the search and Defendant's first statement to police. He was advised of his rights and signed a written waiver before making the statement. Although he was handcuffed to a bench when not being interviewed, he was also permitted to use the restroom, get a drink of water, go outside to smoke, and talk with his fellow

detainees. The undersigned here finds no evidence of coercive police misconduct such that Defendant's "will [was] overborne and his capacity for self-determination critically impaired."

## **RECOMMENDATION**

For all the above reasons, the undersigned recommends Defendant Weaver's Motion To Suppress (Docket Entry 16) be **DENIED.**

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such proposed report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send an authenticated copy of this Report and Recommendation to counsel of record.

DATED: June **21** , 2006

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE